Tom RYAN and the Tom Ryan for Senate Committee, Plaintiffs-Appellants,

v.

James C. KIRKPATRICK, Secretary of State, State of Missouri, et al., Defendants-Respondents.

No. 65167.

Supreme Court of Missouri, En Banc.

April 16, 1984.

Edward V. Ward, St. Louis, John Cary Sims, Alan B. Morrison, Public Citizen Litigation Group, Washington, D.C., for plaintiffs-appellants.

John Ashcroft, Atty. Gen., William F. Arnet, Asst. Atty. Gen., Jefferson City, for defendants-respondents.

GUNN, Judge.

Plaintiffs-appellants in a declaratory judgment action relying on first amendment ground (U.S. Const. amend. I) challenge a specific provision of the Missouri Campaign Finance Disclosure Law [1]—§ 130.056.1(3), Cum.Supp.1983. Defendants' motion for summary judgment was granted. This appeal followed and is lodged in this Court by virtue of Mo. Const. art. V, § 3 which vests exclusive appellate jurisdiction in the Supreme Court of all cases involving the validity of a state statute.

We find § 130.056.1(3), which imposes certain strictures on the use of campaign contribution reports, to be in conflict with United States Constitution first amendment rights and reverse the judgment of the trial court.

Plaintiffs are the Tom Ryan for Senate Committee and Tom Ryan, who was unsuccessful candidate for the Democratic nomination for United States senator in 1982.

The Campaign Finance Disclosure Act, specifically, § 130.041.1(3), RSMo 1978, requires candidates seeking nomination or election to public office, and committees, as

defined in the Act, working on candidates' behalf, to file a report with the secretary of state disclosing the name and address of each person contributing $50 or more in support of the candidacy.[2]

Section 130.056, RSMo Cum.Supp.1983, requires the secretary of state, *inter alia*, to provide appropriate reporting forms for those mandated to file reports. And, specifically, § 130.056.1(3), RSMo Cum.Supp. 1983, directs the secretary of state to make the campaign disclosure reports available for inspection and copying by any person. But an important proscription applies to the use of the information in the reports as pertains to this case. It may not be used by any person for the purpose of soliciting contributions.

Section 130.056.1(3), which is the cynosure of this appeal, provides:

1. The secretary of state shall administer the provisions of this chapter and, in connection therewith, shall:

. . . .

(3) Make the reports and statements filed with him available for public inspection and copying, commencing as soon as practicable but not later than the end of

---

**1.** The *Missouri Campaign Finance Disclosure Law,* §§ 130.011–130.096, RSMo 1978, as amended in part in Cum.Supp.1983.

**2.** Section 130.041.1, RSMo 1978 provides in part:

1. Every committee which is required to file a statement of organization, including a candidate who has elected to serve as his own candidate committee, shall file a legibly printed or typed disclosure report of receipts and expenditures for any election for which the committee makes expenditures or contributions or for which the committee receives contributions with the intent to make expenditures or contributions. The reports shall be filed with the appropriate officer designated in section 130.026 at the times and for the periods prescribed in section 130.046. Except as provided in section 130.051, each report shall set forth:

. . . .

(3) Receipts for the period, including:
(a) Total amount of all monetary contributions received which can be identified in the committee's records by name and address of each contributor;
(b) Total amount of all anonymous contributions accepted;

(c) Total amount of all monetary contributions received through fund-raising events or activities from participants whose names and addresses were not obtained with such contributions, with an attached statement or copy of the statements describing each fund-raising event as required in subsection 6 of section 130.031;
(d) Total dollar value of all in-kind contributions received;
(e) A separate listing by name and address of each person from whom the committee received one or more contributions, in money or any other thing of value, aggregating more than fifty dollars, together with the date and amount of each such contribution;
(f) A listing of each loan received by name and address of the lender and date and amount of the loan. For each loan of one hundred dollars or more, a separate statement shall be attached setting forth the name and address of the lender and each person liable directly, indirectly or contingently, and the date, amount and terms of the loan.
Additionally, § 130.051.3(4), RSMo Cum. Supp.1983 requires disclosure of contributions of $100 or more to an out-of-state committee, as defined, for support of candidates.

the second day after which a report was received, and permit copying of any such report or statement by hand or by duplicating machine, as requested by any person, at the expense of such person, *but no information copied from such reports and statements shall be sold or utilized by any person for the purpose of soliciting contributions* or for any commercial purpose. (Emphasis added.)

Mr. Ryan and his committee want to solicit contributions from contributors appearing on the campaign disclosure reports of certain candidates for public office who seem to share similar political ideology with Mr. Ryan. Section 130.056.1(3) prohibits utilization of the information on the reports "by any person for the purpose of soliciting contributions." Violation of § 130.056.1(3) is a class A misdemeanor. Sec. 130.081, RSMo 1978. Mr. Ryan, of course, does not want to be a lawbreaker. Therefore, he and his committee feel frustration and indignation over the status of the written law.

Plaintiffs, Mr. Ryan and his committee, assert that the interdiction of § 130.056.-1(3) chills their first amendment right of freedom of speech and political expression by limiting avenues of campaign contribution solicitations. Therefore, they sought judgment in Cole County Circuit Court to declare the restriction unconstitutional.

The Secretary of State and Attorney General, as defendants, counter-argue that opening the list of contributors to solicitations by Mr. Ryan and his committee or anyone else would have a contrary chilling effect on those who would want to contribute but do not desire to be harassed by political fund seekers. Further, the defendants contend that contributors have the right of privacy to not have their names given for release for the purpose of soliciting contributions. The state, therefore, defendants say, has a compelling legitimate interest to protect this right of privacy.

The defendants also argue that the incidental limitation of the use of the information contained in the disclosure report abridges no right of freedom of speech or political association. The defendants further argue that the use of the information in the report places heavy burden on the secretary of state, reducing that office to a tool to promote Mr. Ryan's candidacy for office.

Several factors render defendants' arguments unpersuasive.

■ Under the terms of the act, the names and addresses of contributors required to be submitted by report are public and, in fact, are often reported in newspapers. Defendants concede that Mr. Ryan and his committee could solicit votes from those contributors appearing on the disclosure lists and could go so far as to solicit contributions from those whose names appear in the newspapers. Thus, it appears that there can be no chilling effect on contributors. The listing of contributors is public domain, and any substantially lawful use can be made of the names, except for solicitation of funds. Moreover, funds can be solicited, if ostensibly from those names appearing in a newspaper—which is often a fact. So the state's compelling interest in protecting the privacy of contributors fades fast in the light of the publicity which the act generates through operation of its provisions.

*Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) clearly recognizes that public disclosure of names and addresses of contributors to campaigns and the amount of contribution serves a legitimate purpose. This is so despite some deterring effect it may have on those who would otherwise give without attendant publicity. *Buckley v. Valeo, id.*, involved an interpretation of the Federal Election Campaign Act of 1971, as amended in 1974, 2 U.S.C. § 431, *et seq.*, from which the Missouri Campaign Finance Disclosure Act was patterned.[3] Thus, the publication re-

---

**3.** The Federal Election Campaign Act of 1971 also contains a restriction against the use of contributors' names for the solicitation of campaign funds. But we have not been directed to any case law interpreting the validity of that provision.

quirements of Missouri's campaign finance disclosure act are constitutionally legitimate under *Buckley.*

■ The United States Supreme Court has been consistent in holding that the solicitation of funds for financial support of a legitimate cause receives first amendment protective embrace. *Village of Schaumberg v. Citizens for a Better Environment,* 444 U.S. 620, 633, 100 S.Ct. 826, 834, 63 L.Ed.2d 73 (1980), *reh'g denied,* 445 U.S. 972, 100 S.Ct. 1668, 64 L.Ed.2d 250 (1980); *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

■ Plaintiffs have indicated primary solicitation would be through the use of the U.S. mail which also is covered by the aegis of the first amendment. *Consolidated Edison Co. of New York v. Public Service Commission of New York,* 447 U.S. 530, 543, 100 S.Ct. 2326, 2336, 65 L.Ed.2d 319 (1980); *Blount v. Rizzi,* 400 U.S. 410, 416, 91 S.Ct. 423, 428, 27 L.Ed.2d 498 (1971). But, of course, other means of solicitation are likewise protected. *Linmark Associates, Inc. v. Township of Willingboro,* 431 U.S. 85, 94, 97 S.Ct. 1614, 1619, 52 L.Ed.2d 155 (1977).

■ It thus appears that the circumscription on the use of the lists of contributors treads about the first amendment. So we have a first amendment issue before us, requiring a determination of whether the restriction tramples upon freedom of speech. If the legislation does in any way tether free speech, there must be compelling justification for it. *Widmar v. Vincent,* 454 U.S. 263, 270, 102 S.Ct. 269, 274, 70 L.Ed.2d 440 (1981); *Linmark Associates, Inc. v. Township of Willingboro,* 431 U.S. at 94–95, 97 S.Ct. at 1619–1620.

■ There is no doubt that freedom of speech has expansive and comprehensive scope. *Stanley v. Georgia,* 394 U.S. 557, 564, 89 S.Ct. 1243, 1247–48, 22 L.Ed.2d 542

(1969). This is particularly so as it pertains to political association and advocation. *Buckley v. Valeo,* 424 U.S. at 15, 52–53, 96 S.Ct. at 632–33, 651; *CBS, Inc. v. Federal Communications Commission,* 453 U.S. 367, 396, 101 S.Ct. 2813, 2830, 69 L.Ed.2d 706 (1981).

■ Furthermore, the government may not limit expression because of the message to be conveyed, its ideas, subject matter or content. First amendment prevents such restriction. *Police Department of Chicago v. Mosley,* 408 U.S. 92, 95, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972). The proscription on plaintiffs' solicitation of funds from contributors identified by disclosure lists is certainly a governmental imposed limit on part of their campaign message.

Having determined that there is a first amendment issue confronting us, we look to the accompanying fetter on the use of the disclosure listings for proper justification.

The defendants argue that the restrictive ligatures ensure the integrity of the elective process by public recordkeeping. But there is no correlation between the limitation on solicitation and the purpose of the Campaign Finance Disclosure Act. Therefore, this postulation is without merit.

■ Similarly, there can be no chilling effect on contributors through loss of privacy. Anyone can know who they are. The lists are public and are published under the existing law. It is obvious that the contributors whose names appear in published newspapers or news media may be solicited for funds. And the only limit on using disclosure listings for reaching for and touching those identified for campaign and election support pertains to solicitation of funds.[4] By placing the information in the public domain, the state must have

---

Section 130.056.1(3), RSMo 1978 parallels 2 U.S.C. § 438(a)4 (1971).

**4.** With the nearly unrestricted use of the names listed available for plaintiffs and other means

available for them to solicit funds from those contributors, this case seems like a lot of ado about nothing. The important principle of law involved does compel this opinion, however.

presumed that the right of privacy gives way to public interest in this instance. Certainly, the right of privacy vanishes with the required public disclosure of the requisite information. *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 495, 95 S.Ct. 1029, 1046, 43 L.Ed.2d 328 (1975). Defendants have failed to show that shutting off the right of solicitation, and thereby cutting into the first amendment, is essential to protection of substantial private interests from incursion by intolerably improper forces. *Cohen v. California*, 403 U.S. 15, 21, 91 S.Ct. 1780, 1786, 29 L.Ed.2d 284 (1971). That just is not so in this particular instance.

There are ample revetments of defense to repel unwanted forays by fund seekers. Offended addressees of campaign solicitations may, of course, ignore them. *Consolidated Edison Co. of New York v. Public Service Commission of New York*, 447 U.S. at 542, 100 S.Ct. at 2335–36; *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 212, 95 S.Ct. 2268, 2274, 45 L.Ed.2d 125 (1975). And notice may be given the Post Office Department to halt further mailings. *Rown v. United States Post Office Department*, 397 U.S. 728, 737, 90 S.Ct. 1484, 1490–91, 25 L.Ed.2d 736 (1970).

The defendants' argument of the state's compelling interest in fighting for rights of privacy loses much of its integrity in view of § 109.190, RSMo 1978, which allows the Department of Revenue to sell lists of public. records regarding drivers' license and motor vehicle registration lists, presumably to be used by others for solicitation purposes. *See Lamont v. Commissioner of Motor Vehicles*, 269 F.Supp. 880 (S.D.N.Y. 1967), *aff'd* 386 F.2d 449 (2d Cir.1967), *cert. denied*, 391 U.S. 915, 88 S.Ct. 1811, 20 L.Ed.2d 654 (1968), holding the sale by the state commissioner of motor vehicles of automobile registration information was not an onerous burden on the right of privacy.

Defendants' final argument that plaintiffs seek to make the secretary of state's office a costly clearinghouse for selfish purposes is likewise unavailing. The lists are already required to be made available. There is no indication that the state would be put to additional cost by allowing plaintiffs to copy the disclosure lists at their own expense. Plaintiffs can do that now. Thus, this case is clearly distinct from *Miller v. Kusper*, 445 F.2d 1059 (7th Cir.1971), advanced by defendants, in which additional expense and effort would have been imposed on the City of Chicago to provide the information sought by the candidates for aldermanic office.

On the merits of the case, we find that the information sought by plaintiffs entails a first amendment right. The state can show no compelling reason for limiting that right. The provision of § 130.056.1(3) prohibiting the utilization of information of the reports referred to in that statute for soliciting contributions is therefore constitutionally invalid.[5]

The final issue for determination concerns severability. The Act contains a severability clause, § 130.096. But in any event, § 1.140, RSMo 1978, providing the general severability provision for all statutes, controls.

■ We conclude that after excising the invalid portions of § 130.056.1(3), the remainder of the law is severable and enforceable. The language which is invalid does not pertain to the essential elements of the Act. It cannot be presumed that the General Assembly would have declined to enact the other provisions had it known of the defect addressed in this opinion. *State ex rel. Public Defender Commission v. County Court of Greene County*, 667 S.W.2d 409 (Mo. banc 1984); *State ex rel. Enright v. Connett*, 475 S.W.2d 78, 81 (Mo. banc 1972). It is manifest that the unconstitutional portions of the Act under consideration are not so intertwined with its valid

---

**5.** Sections 130.056.2(4) and .3 contain equivalent proscriptions on the utilization of report information to solicit contributions. Those por-

tions of those sections are, of course, similarly invalid.

provisions as to leave it too enervated to stand.

Judgment is reversed.

RENDLEN, C.J., and HIGGINS, BILLINGS, BLACKMAR and DONNELLY, JJ., concur.

WELLIVER, J., concurs in result.